**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT BRISENO, individually and on behalf of all others similarly situated,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>CONAGRA FOODS, INC.,<br>*Defendant-Appellant.* | No. 15-55727<br><br>D.C. No.<br>2:11-cv-05379-MMM-AGR<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted September 12, 2016
San Francisco, California

Filed January 3, 2017

Before: William A. Fletcher, Morgan B. Christen,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland

## SUMMARY*


### Class Certification

The panel affirmed the district court's class certification in putative class actions brought against ConAgra Foods in eleven states by consumers who purchased Wesson-brand cooking oil products labeled "100% Natural" during the relevant period.

Plaintiffs argued that the "100% Natural" label was false or misleading because Wesson oils are made from bioengineered ingredients that plaintiffs contend are "not natural." ConAgra manufactures, markets, distributes, and sells Wesson products. Defendant urged reversal of the district court's class certification because the district court did not require Plaintiff-Appellee Robert Briseno and the other named class representatives to proffer an administratively feasible way to identify members of the certified classes.

The panel held that the language of Federal Rule of Civil Procedure 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification. The panel therefore joined the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement.


* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Angela Spivey (argued), McGuireWoods LLP, Atlanta, Georgia; R. Trent Taylor, McGuireWoods LLP, Richmond, Virginia; E. Rebecca Gantt, McGuireWoods LLP, Norfolk, Virginia; A. Brooks Gresham and Laura E. Coombe, McGuireWoods LLP, Los Angeles, California; for Defendant-Appellant.

Adam Levitt (argued) and Edmund S. Aronowitz, Grant & Eisenhofer P.A., Chicago, Illinois; Mary S. Thomas, Grant & Eisenhofer P.A., Wilmington, Delaware; Ariana J. Tadler, Henry J. Kelston, Meagan Keenan, and Carey Alexander, Milberg LLP, New York, New York; David E. Azar, Milberg LLP, Los Angeles, California; for Plaintiff-Appellee.

---

## OPINION

FRIEDLAND, Circuit Judge:

This appeal requires us to decide whether, to obtain class certification under Federal Rule of Civil Procedure 23, class representatives must demonstrate that there is an "administratively feasible" means of identifying absent class members. Defendant-Appellant ConAgra Foods, Inc. ("ConAgra") urges us to reverse class certification because the district court did not require Plaintiff-Appellee Robert Briseno and the other named class representatives (collectively, "Plaintiffs") to proffer a reliable way to identify members of the certified classes here—consumers

in eleven states who purchased Wesson-brand cooking oils labeled "100% Natural" during the relevant period.[1]

We have never interpreted Rule 23 to require such a showing, and, like the Sixth, Seventh, and Eighth Circuits, we decline to do so now. *See Sandusky Wellness Ctr., LLC, v. Medtox Sci., Inc.*, 821 F.3d 992, 995–96 (8th Cir. 2016); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161 (2016). A separate administrative feasibility prerequisite to class certification is not compatible with the language of Rule 23. Further, Rule 23's enumerated criteria already address the policy concerns that have motivated some courts to adopt a separate administrative feasibility requirement, and do so without undermining the balance of interests struck by the Supreme Court, Congress, and the other contributors to the Rule. We therefore affirm.

## I

Plaintiffs are consumers who purchased Wesson-brand cooking oil products labeled "100% Natural." The "100% Natural" label appeared on every bottle of Wesson-brand oil throughout the putative class periods (and continues to appear on those products). Plaintiffs argue that the "100% Natural" label is false or misleading because Wesson oils are made from bioengineered ingredients (genetically modified organisms, or GMOs) that Plaintiffs contend are "not

[1] We address ConAgra's other challenges to the district court's class certification order in a concurrently filed memorandum disposition.

natural." ConAgra manufactures, markets, distributes, and sells Wesson products.

Plaintiffs filed putative class actions asserting state-law claims against ConAgra in eleven states, and those cases were consolidated in this action. Plaintiffs moved to certify eleven classes defined as follows:[2]

> All persons who reside in the States of California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, or Texas who have purchased Wesson Oils within the applicable statute of limitations periods established by the laws of their state of residence (the "Class Period") through the final disposition of this and any and all related actions.

As relevant here, ConAgra opposed class certification on the ground that there would be no administratively feasible way to identify members of the proposed classes because consumers would not be able to reliably identify themselves as class members. As a result, ConAgra argued that the class was not eligible for certification.[3]

---

[2] We refer to Plaintiffs' amended motion for class certification, which is the subject of this appeal.

[3] ConAgra called this a failure of "ascertainability." We refrain from referring to "ascertainability" in this opinion because courts ascribe widely varied meanings to that term. For example, some courts use the word "ascertainability" to deny certification of classes that are not clearly or objectively defined. *See, e.g.*, *Brecher v. Republic of Argentina*, 806 F.3d 22, 24–26 (2d Cir. 2015) (holding that a class

The district court acknowledged that the Third Circuit and some district courts have refused certification in similar circumstances, but it declined to join in their reasoning. Instead, the district court held that, at the certification stage, it was sufficient that the class was defined by an objective criterion: whether class members purchased Wesson oil during the class period.

The district court ultimately granted Plaintiffs' motion in part and certified eleven statewide classes to pursue certain claims for damages under Federal Rule of Civil Procedure 23(b)(3). ConAgra timely sought and obtained permission to appeal pursuant to Rule 23(f).

II

Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court. Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

---

defined as all owners of beneficial interests in a particular bond series, without reference to the time owned, was too indefinite); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (affirming denial of class certification because a class composed of state residents "active in the 'peace movement'" was uncertain and overbroad). Others have used the term in referring to classes defined in terms of success on the merits. *See, e.g.*, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) (remanding and instructing the district court to consider, "as part of its class-definition analysis," *inter alia*, whether the proposed classes could be defined without creating a fail-safe class). Our court does not have its own definition. *See infra* note 4.

ConAgra argues that, in addition to satisfying these enumerated criteria, class proponents must also demonstrate that there is an administratively feasible way to determine who is in the class.[4] ConAgra claims that Plaintiffs did not propose any way to identify class members and cannot prove that an administratively feasible method exists because consumers do not generally save grocery receipts and are unlikely to remember details about individual purchases of a low-cost product like cooking oil. We have not previously interpreted Rule 23 to require such a demonstration, and, for the reasons that follow, we do not do so now.

### A

We employ the "traditional tools of statutory construction" to interpret the Federal Rules of Civil

---

[4] On appeal, ConAgra continues to present administrative feasibility as part of a threshold "ascertainability" prerequisite to certification. ConAgra relies on a footnote in *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014), to argue that our court has recognized such a requirement. But in that footnote we explicitly declined to decide whether the district court abused its discretion by denying certification based on a "threshold ascertainability test." *Id.* at 1071 n.3. ConAgra cites no other precedent to support the notion that our court has adopted an "ascertainability" requirement. This is not surprising because we have not. Instead, we have addressed the types of alleged definitional deficiencies other courts have referred to as "ascertainability" issues, *see supra* note 3, through analysis of Rule 23's enumerated requirements. *See, e.g.*, *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–39 (9th Cir. 2016) (addressing claim that class definition was overbroad—and thus arguably contained some members who were not injured—as a Rule 23(b)(3) predominance issue); *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) (recognizing that a class must not be vaguely defined and must be "sufficiently definite to conform to Rule 23"). Although the parties here use the word "ascertainability," they dispute only whether a class proponent must proffer an administratively feasible way to identify class members. That is therefore the only issue we decide.

Procedure. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014) (quoting *United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013)). In construing what Rule 23 requires, our "'first step'" is thus "'determin[ing] whether the language at issue has a plain meaning.'" *Id.* (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) (noting that interpretation of the federal rules "begin[s] with the language of the Rule itself"). "When interpreting [the Rule], words and phrases must not be read in isolation, but with an eye toward the 'purpose and context of the statute.'" *Petri*, 731 F.3d at 839 (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). "An interpretation that gives effect to every clause is generally preferable to one that does not." *Mackay*, 742 F.3d at 864.

Beginning then with the plain language, Rule 23(a) is titled "Prerequisites" and provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). This provision identifies the prerequisites to maintaining a class action in federal court. It does not mention "administrative feasibility."

Traditional canons of statutory construction suggest that this omission was meaningful. Because the drafters specifically enumerated "[p]rerequisites," we may conclude that Rule 23(a) constitutes an exhaustive list. *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (explaining that, under the doctrine of *expressio unius est exclusio alterius*, the enumeration of certain criteria to the exclusion of others should be interpreted as an intentional omission). We also take guidance from language used in other provisions of the Rule. In contrast to Rule 23(a), Rule 23(b)(3) provides, "The matters pertinent to these findings *include*," followed by four listed considerations. FED. R. CIV. P. 23(b)(3) (emphasis added). If the Rules Advisory Committee had intended to create a non-exhaustive list in Rule 23(a), it would have used similar language. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (alteration in original) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam))). Moreover, Rule 23(b)(3) requires a court certifying a class under that section to consider "the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3)(D). Imposing a separate administrative feasibility requirement would render that manageability criterion largely superfluous, a result that contravenes the familiar precept that a rule should be interpreted to "give[] effect to every clause." *Mackay*, 742 F.3d at 864.

Supreme Court precedent also counsels in favor of hewing closely to the text of Rule 23. In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court considered whether a settlement-only class could be certified without satisfying the requirements of Rule 23. In holding that it could not,[5] the Court underscored that the Federal Rules of Civil Procedure result from "an extensive deliberative process involving . . . a Rules Advisory Committee, public commenters, the Judicial Conference, [the Supreme] Court, [and] Congress." *Id.* at 620. The Court warned that "[t]he text of a rule thus proposed and reviewed limits judicial inventiveness" and admonished that "[c]ourts are not free to amend a rule outside the process Congress ordered." *Id.* The lesson of *Amchem Products* is plain: "Federal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted." *Id.* at 622.

In sum, the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification. Mindful of the Supreme Court's guidance, we decline to interpose an additional hurdle into the class certification process delineated in the enacted Rule. *See Sandusky Wellness Ctr., LLC, v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (declining to recognize a "separate, preliminary" requirement and, instead, "adher[ing] to a rigorous analysis of the Rule 23 requirements").

[5] The Court recognized, however, that a settlement-only class—which by definition will not proceed to trial—can be certified without consideration of potential trial-management challenges under Rule 23(b)(3)(D). *See Amchem Prods.*, 521 U.S. at 620.

B

We recognize that the Third Circuit does require putative class representatives to demonstrate "administrative feasibility" as a prerequisite to class certification.[6] *See Byrd*

---

[6] Other circuits have cited the Third Circuit's administrative feasibility standard but have not actually imposed the standard in the same manner as has the Third Circuit. The First Circuit has cited *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), for the proposition that at the class certification stage, it must be anticipated that, by the time a case reaches the liability and claims administration stages, there will be an administratively feasible way to distinguish injured from uninjured class members. *See In re Nexium Antitrust Litig.*, 777 F.3d 9, 19–20 (1st Cir. 2015). Requiring plaintiffs to propose a mechanism for eventually determining whether a given class member is entitled to damages is different from requiring plaintiffs to demonstrate an administratively feasible way to identify *all* class members at the certification stage. In *Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015), the Second Circuit mentioned administrative feasibility and cited *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012), but administrative feasibility played no role in the court's decision, which instead turned on the principle that a class definition must be objective and definite. *Brecher*, 806 F.3d at 24–26. The Fourth Circuit has reversed class certification based in part on potential "administrative barrier[s]" to ascertaining class members and cited the Third Circuit in doing so. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358–60 (4th Cir. 2014). But the "administrative barriers" identified by the court in *EQT* sounded in definitional deficiencies, numerosity questions, predominance problems, and management difficulties, *see id.*—issues that all implicate other class certification criteria. It is thus far from clear that the Fourth Circuit requires an affirmative demonstration of administrative feasibility as a separate prerequisite to class certification. Even the Third Circuit has cabined its administrative feasibility rule in recent cases. *See In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 396–97 (3d Cir. 2015) (distinguishing *Carrera* as addressing particular "evidentiary problems"), *cert. denied sub nom. PNC Bank v. Brian W.*, 136 S. Ct. 1167 (2016); *Byrd*, 784 F.3d at 164 (clarifying that *Carrera* did not create a "records requirement" at the class certification stage and instead "only requires the plaintiff to show that class members *can be identified*" (quoting *Carrera*, 727 F.3d at 308 n.2 (emphasis added))).

*v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015); *Carrera v. Bayer Corp.*, 727 F.3d 300, 306–08 (3d Cir. 2013). The Third Circuit justifies its administrative feasibility requirement not through the text of Rule 23 but rather as a necessary tool to ensure that the "class will actually function as a class." *Byrd*, 784 F.3d at 162. The Third Circuit suggests that its administrative feasibility prerequisite achieves this goal by (1) mitigating administrative burdens; (2) safeguarding the interests of absent and bona fide class members; and (3) protecting the due process rights of defendants. *See Carrera*, 727 F.3d at 307, 310. The Seventh Circuit soundly rejected those justifications in *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), and the Sixth Circuit followed suit, *see Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (citing *Mullins* in declining to follow *Carrera*). We likewise conclude that Rule 23's enumerated criteria already address the interests that motivated the Third Circuit and, therefore, that an independent administrative feasibility requirement is unnecessary.

1

One rationale the Third Circuit has given for imposing an administrative feasibility requirement is the need to mitigate the administrative burdens of trying a Rule 23(b)(3) class action. Courts adjudicating such actions must provide notice that a class has been certified and an opportunity for absent class members to withdraw from the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011); *accord* FED. R. CIV. P. 23(c)(2)(B). The Third Circuit largely justifies its administrative feasibility prerequisite as necessary to ensure that compliance with this procedural requirement does not compromise the efficiencies Rule

Case: 15-55727, 01/03/2017, ID: 10251478, DktEntry: 52-1, Page 13 of 24



23(b)(3) was designed to achieve.[7] *See Shelton v. Bledsoe*, 775 F.3d 554, 562 (3d Cir. 2015); *Carrera*, 727 F.3d at 307.

But Rule 23(b)(3) already contains a specific, enumerated mechanism to achieve that goal: the manageability criterion of the superiority requirement. Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy," and it specifically mandates that courts consider "the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3)(D).

Moreover, as the Seventh Circuit has observed, requiring class proponents to satisfy an administrative feasibility prerequisite "conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins*, 795 F.3d at 663; *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (holding that refusal to certify a class "on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule'" (quoting *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980))), *overruled on other grounds by In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), *and superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). This presumption makes ample sense given the variety of procedural tools courts can use to manage the

[7] Because the notice requirement is mandatory only for Rule 23(b)(3) classes, the Third Circuit has declined to extend its "ascertainability" prerequisite, which includes its administrative feasibility requirement, to Rule 23(b)(2) classes. *See Shelton*, 775 F.3d at 562–63. We understand ConAgra's arguments here to be similarly limited to Rule 23(b)(3) class actions.

administrative burdens of class litigation. For example, Rule 23(c) enables district courts to divide classes into subclasses or certify a class as to only particular issues. FED. R. CIV. P. 23(c)(4), (5); *see also In re Visa Check/MasterMoney*, 280 F.3d at 141 (listing "management tools available to" district courts).

Adopting a freestanding administrative feasibility requirement instead of assessing manageability as one component of the superiority inquiry would also have practical consequences inconsistent with the policies embodied in Rule 23. Rule 23(b)(3) calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of "other methods" for resolving the controversy. By contrast, as the Seventh Circuit has emphasized, a standalone administrative feasibility requirement would invite courts to consider the administrative burdens of class litigation "in a vacuum." *See Mullins*, 795 F.3d at 663. That difference in approach would often be outcome determinative for cases like this one, in which administrative feasibility would be difficult to demonstrate but in which there may be no realistic alternative to class treatment. *See id.* at 663–64. Class actions involving inexpensive consumer goods in particular would likely fail at the outset if administrative feasibility were a freestanding prerequisite to certification.

The authors of Rule 23 opted not to make the potential administrative burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs. We lack authority to substitute our judgment for theirs. *See Amchem Prods.*, 521 U.S. at 620 ("[T]he Rule as now composed sets the requirements [courts] are bound to enforce.").

Case: 15-55727, 01/03/2017, ID: 10251478, DktEntry: 52-1, Page 15 of 24



2

The Third Circuit has also justified its administrative feasibility requirement as necessary to protect absent class members and to shield bona fide claimants from fraudulent claims.

*A*

With respect to absent class members, the Third Circuit has expressed concern about whether courts would be able to ensure individual notice without a method for reliably identifying class members. *See Byrd*, 784 F.3d at 165; *Carrera*, 727 F.3d at 307. We believe that concern is unfounded, because neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member.

Rule 23 requires only the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort*." FED. R. CIV. P. 23(c)(2)(B) (emphasis added). In other words, "[t]he rule does not insist on actual notice to all class members in all cases" and "recognizes it might be *impossible* to identify some class members for purposes of actual notice." *Mullins*, 795 F.3d at 665. And courts have long employed *cy pres* remedies when some or even all potential claimants cannot be identified. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) ("In a majority of class actions at least some unclaimed damages or unlocated class members remain. The existence of a large unclaimed damage fund, while relevant to the manageability determination, does not necessarily make a class action 'unmanageable.'" (citation omitted)). The notion that an inability to identify all class members

precludes class certification cannot be reconciled with our court's longstanding *cy pres* jurisprudence. *See id.*

Likewise, the Due Process Clause does not require actual, individual notice in all cases. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994); *see also Mullins*, 795 F.3d at 665 (explaining that when individual notice by mail is "not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process"). Courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process. *See, e.g.*, *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676–77 (7th Cir. 2013) (holding that sticker notices on two allegedly offending ATMs, as well as publication in the state's principal newspaper and on a website, provided adequate notice to class members in an action challenging ATM fees); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1319 (11th Cir. 2012) (holding that notice to unidentified class members by periodical and website satisfied due process).

Moreover, the lack-of-notice concern presumes that some harm will inure to absent class members who do not receive actual notice. In theory, inadequate notice might deny an absent class member the opportunity to opt out and pursue individual litigation. But in reality that risk is virtually nonexistent in the very cases in which satisfying an administrative feasibility requirement would prove most difficult—low-value consumer class actions. Such cases typically involve low-cost products and, as a result, recoveries too small to incentivize individual litigation. At the same time, an administrative feasibility requirement like that imposed by the Third Circuit would likely bar such actions because consumers generally do not keep receipts or

other records of low-cost purchases. Practically speaking, a separate administrative feasibility requirement would protect a purely theoretical interest of absent class members at the expense of any possible recovery for all class members—in precisely those cases that depend most on the class mechanism. Justifying an administrative feasibility requirement as a means of ensuring perfect recovery at the expense of any recovery would undermine the very purpose of Rule 23(b)(3)—"vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem Prods.*, 521 U.S. at 617 (quoting Benjamin Kaplan, *A Prefatory Note*, 10 B.C. INDUS. & COM. L. REV. 497, 497 (1969)).

*B*

The Third Circuit has also expressed concern that without an administrative feasibility requirement, individuals will submit illegitimate claims and thereby dilute the recovery of legitimate claimants. *See Carrera*, 727 F.3d at 310.

The fraud concern may be valid in theory, but "in practice, the risk of dilution based on fraudulent or mistaken claims seems low, perhaps to the point of being negligible." *Mullins*, 795 F.3d at 667. This is especially true in class actions involving low-cost consumer goods. Why would a consumer risk perjury charges and spend the time and effort to submit a false claim for a de minimis monetary recovery? And even if consumers might do so, courts "can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to avoid or minimize fraudulent claims. *Id.*

As to the dilution concern specifically, consistently low participation rates in consumer class actions make it very unlikely that non-deserving claimants would diminish the recovery of participating, bona fide class members.[8] *See id.* "It is not unusual for only 10 or 15% of the class members to bother filing claims." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 119 (2007). Moreover, if certification is denied to prevent dilution, deserving class members "will receive nothing, for they would not have brought suit individually in the first place." *Mullins*, 795 F.3d at 668. As the Seventh Circuit put it, "[w]hen it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good." *Id.* at 666.

3

Finally, the Third Circuit has characterized its administrative feasibility requirement as necessary to protect the due process rights of defendants "to raise individual challenges and defenses to claims." *Carrera*, 727 F.3d at 307. The gravamen of this due process concern seems to be

[8] Theoretically, if there were non-legitimate claimants, they would dilute a *cy pres* fund. But that outcome would not impact bona fide claimants, who would have already received distributions. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (explaining that, after distributions have been made to any claimants, "[t]he *cy pres* doctrine allows a court to distribute *unclaimed* or *non-distributable portions* of a class action settlement fund to the 'next best' class of beneficiaries" (emphasis added)). Nor would it affect the defendant, whose liability will already have been determined. *See Six (6) Mexican Workers*, 904 F.2d at 1307 ("The use of *cy pres* or fluid recovery to distribute unclaimed funds may be considered only after a valid judgment for damages has been rendered against the defendant.").

that defendants must have an opportunity to dispute whether class members really bought the product or used the service at issue.[9] *See id.* (stating that a defendant has a "due process right to challenge the proof used to demonstrate class membership"); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.").

As an initial matter, defendants plainly can mount such challenges as to the named class representatives. Class representatives must establish standing by, for example, showing that they bought the product or used the service at issue. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (holding that class representatives who allegedly paid more for or purchased a product due to a defendant's deceptive conduct have suffered an "injury in fact" that establishes Article III standing); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (stating that "[t]he plaintiff class bears the burden of showing" that "at least one named plaintiff" meets the Article III standing requirements). At the class certification stage, the class

---

[9] Relatedly, ConAgra argues that an administrative feasibility requirement would protect its ability to meaningfully assert a *res judicata* defense in future actions asserting the same claims. But determining whether a plaintiff in that future action was a member of this class precluded from relitigating would be possible so long as the class definition in this action was clear (and ConAgra does not dispute that it is). If a future plaintiff were to assert a claim challenging the "100% Natural" label on Wesson oil purchased during the class period in one of the eleven states at issue, that would show that she was a member of the class bound by the judgment. This would be so regardless of how "administratively feasible" it was to prove the entirety of the membership at the class certification stage in this action. *See* Geoffrey C. Shaw, Note, *Class Ascertainability*, 124 YALE L.J. 2354, 2374–78 (2015).

Case: 15-55727, 01/03/2017, ID: 10251478, DktEntry: 52-1, Page 20 of 24



representatives bear the burden of demonstrating compliance with Rule 23. *See Wal-Mart Stores*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule."). And if the case proceeds past the certification stage, the plaintiff class must carry the burden of proving every element of its claims to prevail on the merits. *See id.* at 351 n.6 (observing that, in a securities fraud class action, "plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market, an issue that they will surely have to prove *again* at trial in order to make out their case on the merits" (citation omitted)); *id. at* 367 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" (quoting 28 U.S.C. § 2072(b))); *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action. . . . leaves the parties' legal rights and duties intact and the rules of decision unchanged."). Defendants can oppose the class representatives' showings at every stage. Indeed, in litigating class certification, ConAgra took discovery of the class representatives, challenged whether they bought Wesson oil products, attacked their credibility, and disputed whether they relied on the label at issue. As the case proceeds, ConAgra will have further opportunities to contest every aspect of Plaintiffs' case.

Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file claims for damages. At the claims administration stage, parties have long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims. *Mullins*, 795 F.3d at 667. Rule 23 specifically contemplates the need for such individualized

claim determinations after a finding of liability. *See* FED. R. CIV. P. 23 advisory committee's note to 1966 amendment (explaining that certification may be proper "despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class"); *see also Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) (reaffirming, after *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), that the need for individualized damages determinations after liability has been adjudicated does not preclude class certification). ConAgra does not explain why such procedures are insufficient to safeguard its due process rights.[10]

Given these existing opportunities to challenge Plaintiffs' case, it is not clear why requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect ConAgra's due process rights. As the Seventh Circuit put it, "[t]he due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." *Mullins*, 795 F.3d at 670. ConAgra may prefer to terminate this litigation in one fell swoop at class certification rather than later challenging each individual class member's claim to recovery, but there is no due process right to "a *cost-effective* procedure for challenging every individual claim to class membership." *Id.* at 669.

---

[10] District courts also have discretion to allow limited discovery from absent class members if the particular circumstances of a specific case justify it. *See* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 9:13 (5th ed. 2013) ("[C]ertain forms of limited discovery from absent class members may be permitted in certain circumstances.").

If the concern is that claimants in cases like this will eventually offer only a "self-serving affidavit" as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights. If a Wesson oil consumer were to pursue an individual lawsuit instead of a class action, an affidavit describing her purchases would create a genuine issue if ConAgra disputed the affidavit, and would prevent summary judgment against the consumer. *See Mullins*, 795 F.3d at 669; *accord* FED. R. CIV. P. 56(c)(1)(A). Given that a consumer's affidavit could force a liability determination at trial without offending the Due Process Clause, we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made.

Moreover, identification of class members will not affect a defendant's liability in every case. For example, in this case, Plaintiffs propose to determine ConAgra's aggregate liability by (1) calculating the price premium attributable to the allegedly false statement that appeared on every unit sold during the class period, and (2) multiplying that premium by the total number of units sold during the class period. We agree with the Seventh Circuit that, in cases in which aggregate liability can be calculated in such a manner, "the identity of particular class members does not implicate the defendant's due process interest at all" because "[t]he addition or subtraction of individual class members affects neither the defendant's liability nor the total amount of damages it owes to the class." *Mullins*, 795 F.3d at 670; *see also Six (6) Mexican Workers*, 904 F.2d at 1307 ("Where the only question is how to distribute damages, the interests affected are not the defendant's but rather those of the silent class members."). The defendant will generally know how

many units of a product it sold in the geographic area in question, and if the defendant is ultimately found to have charged, for example, 10 cents more per unit than it could have without the challenged sales practice, the aggregate amount of liability will be determinable even if the identity of all class members is not. The Third Circuit recognized as much in *Carrera*. *See Carrera*, 727 F.3d at 310 (acknowledging but not addressing the argument that "[the defendant's] total liability" would not be "affected by unreliable affidavits").

For these reasons, protecting a defendant's due process rights does not necessitate an independent administrative feasibility requirement.

C

In summary, the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification, and the policy concerns that have motivated the Third Circuit to adopt a separately articulated requirement are already addressed by the Rule. We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement. *See Sandusky Wellness Ctr., LLC, v. Medtox Sci., Inc.*, 821 F.3d 992, 995–96 (8th Cir. 2016) (recognizing that some courts have imposed an administrative feasibility requirement, but declining to do so); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) ("We see no reason to follow *Carrera*."); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) (rejecting the administrative feasibility requirement as incompatible with Rule 23 and "the balance of interests that Rule 23 is designed to protect").

III

For the forgoing reasons, the district court did not err in declining to condition class certification on Plaintiffs' proffer of an administratively feasible way to identify putative class members.

**AFFIRMED.**